UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

VICKI TRAHAN,

    Plaintiff,

v.                                                            CASE NO.:

AT&T CORPORATION, NCO FINANCIAL
SYSTEMS, INC.,

    Defendant.
_____/

## COMPLAINT

1. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") and the Tennessee Consumer Protection Act, Tenn.Code.Ann. §47-18-104 *et seq.* ("TCPA").

## JURISDICTION AND VENUE

2. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §§1331 and § 1391

3. The alleged violations described in the Complaint occurred in Shelby County, Tennessee.

## FACTUAL ALLEGATIONS

4. Plaintiff is a natural person, and citizen of the State of Tennessee, residing in Shelby County, Tennessee

5. Plaintiff is a "consumer" as defined in 15 U.S.C. §1692(a)(3) and by Tenn.Code.Ann. §47-18-103(2).

1

6. Defendant, AT&T Corporation, (hereinafter "AT&T") is a corporation and a citizen of the state of New York, with its principal place of business at One AT&T Way, Bedminister, New Jersey, 07921.

7. Defendant, AT&T is a "creditor" as defined in 15 U.S.C. §1692(a)(4)

8. Defendant, NCO Financial Systems, Inc. (hereinafter "NCO"), is a corporation and a citizen of the State of Pennsylvania with its principle place of business at 507 Prudential Road, Horsham, PA 19044.

9. Defendant NCO is a "debt collector" as defined by 15 U.S.C §1692(a)(6). Defendant sought to collect a debt from Plaintiff that arose from a transaction incurred for personal, family or household purposes and therefore is a "consumer debt."

10. The debt that is the subject matter of this complaint is a "consumer debt" as defined by 15 U.S.C. §1692(a)(4).

11. The transaction which lead to the alleged debt at issue in this complaint is a "consumer transaction" as defined by Tenn.Code.Ann. §47-18-103(19).

12. Defendants followed their corporate policies when attempting to collect and communicate with the Plaintiff.

13. Defendant AT&T advertised their good or services with the intent to not sell them as advertised.

14. Defendant AT&T mislead the Plaintiff as to price reductions of their internet service.

15. Defendant NCO attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

2

16. Defendant NCO intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

17. In or about the end of December 2010, Plaintiff, an AT&T residential telephone customer, received a flier in the mail advertising internet service for $14.95 a month for the first year if customer enrolls before the end of the year. (See Attached **Exhibit A**)

18. On or about December 31, 2010, Plaintiff went to an AT&T store location to enroll in the promotion which advertised Fast Access DSL for $14.95 per month for the first year when added to home phone service.

19. An AT&T representative advised the Plaintiff that her first month's bill will include some additional start up fees, but subsequent months her cost was $14.95 plus a $10 modem.

20. In or about January 2011, Plaintiff received her first bill which reflected that she had incurred the regular monthly rate for internet ($33.05) instead of the promotional rate of ($14.95) for which she had registered. Plaintiff called AT&T and spoke with a representative who indicated that "it would be resolved." (See Attached **Exhibit B**)

21. In or about early February 2011, Plaintiff received her second bill from AT&T which, again, failed to apply the $14.95 promotional rate to her internet services, instead charging her $34.95. (See Attached **Exhibit C**)

3

22. On or about February 7, 2011 Plaintiff, again, called customer services for AT&T regarding her monthly internet charge, but this time was told that that they "cannot help her."

23. In or about February 2011, Plaintiff paid AT&T $48.00, which represented the $14.95 promotional rate for internet. (Home phone charges $23, Modem rental $10, and Internet Rate $15.00).

24. In or about early March 2011, Plaintiff received her AT&T bill, which had been assessed late fees and penalties, in addition to, again, failing to apply the promotional rate of $14.95, and instead charging Plaintiff $24.95 for internet services. (See Attached **Exhibit D**)

25. On or about March 11, 2011, Plaintiff spoke with an AT&T representative "Leonard" about the incorrect internet rate for January and February and that a $10 refund, per month, should be issued to Plaintiff.

26. On or about April 2, 2011, Plaintiff paid AT&T $40, which reflected her residential and cellular telephone charges, as well as the $14.95 promotional internet rate.

27. Plaintiff continued to be billed full price for the internet services AT&T had offered to her for $14.95. (See Attached Composite **Exhibit E).**

28. On or about May 7, 2011, Plaintiff again received her AT&T statement which still reflected the "regular" internet rate of $24.95. Plaintiff again calculated her total amount due using the agreed promotional rate, and paid $37.13.

29. On or about July 27, 2011 at 3:16pm Plaintiff, again, contacted AT&T. A representative, "Ms. Dobbins" confirmed with Plaintiff that the "special rate" should apply

4

to her account, but found that the promo code had never been entered. Ms. Dobbins informed Plaintiff that there had been some mix-up as the request for the internet service had not been entered into the computer until January 4, 2011, after the December 31, 2010 deadline. Ms. Dobbins conveyed to Plaintiff that she had to follow up with a supervisor, and that Plaintiff would receive a return phone call in 24 hours. No such call was ever received.

30. Plaintiff began receiving collection notices from AT&T in the fall of 2011. **(See Composite Exhibit F)**.

31. Calls to the number provided on the Notices, 1-888-757-6500, resulted in countless hours on hold, and when a representative was available, they either apologized for the mistake and assured her the problem would be corrected right away; or, in the alternative, informed her that there was nothing they could do.

32. On or about January 4, 2012, Plaintiff called AT&T and spoke with Leticia, who "could not help."

33. On or about January 14, 2012, at 1:33pm Plaintiff called AT&T at 877-534-1038. She was then instructed to call 866-666-1675. When Plaintiff called 866-666-1675 at 1:37pm on January 14, she received a message that the office was closed.

34. On or about January 26, 2012, at 11:33am Plaintiff again called customer service and spoke with "Shawna Joseph" who transferred Plaintiff to "Mrs. Harrell" at 11:35 am. Mrs. Hartell asked Plaintiff to call back on a more convenient number, 866-446-4115 to complete her complaint. When Plaintiff called 866-446-4115, she spoke with a "Mr. Mo" who "could not help [her]" and instead filled out a referral for a

supervisor, with the requisite authority, to give her a call back.  No such call was ever received.

35.    Plaintiff contacted AT&T Customer Service on countless other occasions and faced a substantially similar expeierence, being placed on hold, hung up on, and transferred to multiple departments.

36.    Plaintiff's numerous attempts to resolve this issue was limited as she was informed that the Customer Service Department would only handle these disputes during "normal business hours" and not on "weekends or evenings."

37.    As Plaintiff's employment schedule coincided with AT&T's Customer Service's 'business hours" Plaintiff was unable to make daily calls to AT&T regarding her account.

38.    To supplement her repeated calls to customer service, Plaintiff, on numerous occasions, went into AT&T retail locations.  On one such occasion a representative from the AT&T store told Plaintiff she could not help Plaintiff with the issue, but instead offered to call AT&T customer service, from the AT&T retail location. The Plaintiff and store representative continued to try to get through to a customer service representative until the store closed.  No customer service representative ever answered.

39.    Despite actual knowledge that Plaintiff disputed the legitimacy and amount of the alleged AT&T debt, AT&T turned the account over the NCO Financial Services, Inc., for collection.

40.    In or about November 2012, Plaintiff began receiving debt collection calls from Defendant NCO.

41. On or about November 16, 2012, Plaintiff received a letter from Defendant, NCO. (**See Attached Exhibit G**).

42. Defendant NCO intentionally harassed and abused Plaintiff by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

43. Plaintiff received calls including, but not limited to, the following days:

| 11/14/2012 | 800-303-1043 ext. 2137 | "Lashante Lang" | |
| 11/19/2012 | 800-303-1043 ext. 2164 | "Denise Anderson" | |
| 11/20/2012 | 800-303-1043 ext. 2957 | | Left voicemail to return call, reference number #4V9CVXS |
| 11/28/2012 | | "Breshawn Bush" | Requested $296.81 in payment |
| 12/11/2012 | 800-303-1043 ext. 2164 | "Denise Anderson" | Requested $296.81 in payment |
| 12/14/2012 | | "Laura McCollum" | Requested $296.81 in payment and if you don't pay will damage your credit |
| 01/04/2013 | | "Ruby Giempo" | |

44. In or about December 2012, NCO called Plaintiff to collect a debt she did not legitimately owe.

45. Defendant NCO's corporate policy and procedures is structured as to continue to call individuals like the Plaintiff, despite these individuals explaining to the Defendant that they do not owe the amount in question.

7

46. Defendant, NCO's, corporate policy and procedures provided no means for the Plaintiff to have her account corrected and credited for the additional charges.

47. Defendant NCO has a corporate policy to harass and abuse individuals despite actual knowledge that the consumer disputes the amount of the debt.

48. Defendant NCO has many similar complaints from non-debtors across the country, as those alleged in this lawsuit, by Plaintiff.

49. Defendant, NCO, willfully and/or knowingly violated the FDCPA with respect to the Plaintiff.

50. Defendant AT&T's corporate policy and procedures provided no means for the Plaintiff to have her account corrected and credited for the additional charges.

51. Defendant AT&T has a corporate policy to forward accounts to collection companies despite an outstanding dispute at the alleged debts legitimacy.

52. Defendant AT&T advertised a discounted price for internet service, with no intention of charging the advertised, discounted rate

53. Defendant has many similar complaints from non-debtors across the country, as those alleged in this lawsuit, by Plaintiff.

54. In fact, Defendant AT&T continues to send promotional material to Plaintiff advertising the discounted internet service which is the subject of this Complaint.

55. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

**COUNT I**
**(AT&T: Violations of the TCPA)**

56. Plaintiff incorporates Paragraphs one (1) through fifty-five (55).

57. At all times relevant to this action, Defendant is subject to and must abide by Tenn.Code.Ann. §47-18-104 *et seq*.

58. Defendant has violated §47-18-104(b)(9) by advertising goods or services with intent not to sell them as advertised.

59. Defendant has violated §47-18-104(b)(11) by making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of price reductions.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for punitive damages, statutory damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (NCO: Violations of the FDCPA)

60. Plaintiff incorporates Paragraphs one (1) through fifty five (55).

61. At all times relevant to this action, Defendant is subject to and must abide by 15 U.S.C. §1692 et seq.

62. Defendant has violated 15 U.S.C. §1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

63. Defendant has violated 15 U.S.C. §1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

64. Defendant has violated 15 U.S.C. §1692(e)(2)(a) by attempting to collect on a debt from the plaintiff which he does not owe.

9

65. Defendant has violated 15 U.S.C. §1692(f) by using unfair an unconscionable means to collect or attempt to collect any debt.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for punitive damages, statutory damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

s/Mark A. Lambert
Mark A. Lambert, Esq.
Tennessee Bar. No.: 022509
Attorney for Plaintiff
Morgan & Morgan, PA
40 South Main Street, Suite 2600
One Commerce Square
Memphis, TN 38103
MLambert@ForThePeople.com

s/ William Peerce Howard
William Peerce Howard, Esq.
Florida Bar No.: 0103330
Amanda J. Allen, Esq.
Florida Bar No.: 098228
Attorney for Plaintiff
Morgan & Morgan, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
WHoward@ForThePeople.com
AAllen@ForThePeople.com